**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lisa HIZER, Defendant–Appellant.**

No. 00–2470.

United States Court of Appeals,
Sixth Circuit.

Aug. 19, 2002.

Before SILER, COLE and CLAY, Circuit Judges.

PER CURIAM.

Defendant Lisa Hizer appeals her convictions for conspiracy to obstruct justice and tamper with a witness, obstruction of justice and attempted witness tampering. She argues that the government presented insufficient evidence at trial to support her convictions. For the reasons set forth below, we affirm.

## Background

Hizer was indicted on three criminal charges along with co-defendant, Craig Alan Toaz. At the time, Toaz was awaiting trial on several unrelated charges, including conspiracy to distribute methamphetamine. In this case, count one of the indictment alleged that Hizer and Toaz conspired to obstruct the judicial proceedings relating to Toaz's criminal prosecution by corruptly persuading a material witness in that proceeding to give false testimony in violation of 18 U.S.C. §§ 371, 1503 and 1512(b)(1). Count two charged Hizer with obstruction of justice in violation of 18 U.S.C. § 1503 and count three charged her with attempted witness tampering in violation of 18 U.S.C. § 1512(b)(1).

At trial, the government's evidence focused on Hizer's contact with David Porter, a government witness in the criminal prosecution of Toaz. Prior to Toaz's indictment, Porter had been caught by federal agents with some methamphetamine and had admitted in grand jury testimony that the drugs had come from Toaz. As a result of Porter's medical condition, the government arranged for him to give deposition testimony four days before Toaz's trial was to begin.

While incarcerated on his charge, Toaz told his cellmate, William McKinney, that he knew Porter was going to be a key witness in his trial and that he was dying. McKinney testified that Toaz told him that his girlfriend Lisa was coming to see him and that he was going to have her visit Porter in light of "Porter's change of heart." Toaz explained that he intended to give "her a list of stuff to say to Porter to mess up the case."

Dennis Carlson, Toaz's attorney, was told by Hizer that she intended to see Porter. She explained that she just wanted Porter to tell the truth. She told Carlson that Porter was concerned about being charged with perjury if he testified differently during his deposition. She also explained that "Porter wanted to come clean."

Hizer also told Melanie Stafford that "she was going to go over to Dave Porter's and try to talk to him so that he would get on [Toaz's] side." Moreover, Hizer told Catherine Fase that Toaz supplied methamphetamine to Porter.

Michigan State Police Detective Kenneth Colby testified that he went with Agent Jeff Kitchen and Special Agent Bruce Johnson to Dominic Lindsley's home where Porter was staying. When they arrived, they were informed that Hizer had called to say she was coming to see Porter. Thereafter, Hizer drove up to the house and asked Colby if his name was Dominic. Realizing for the first time that Hizer did not recognize him as a police officer, Colby decided to act as if he were Dominic to find out why she had come to see Porter. Colby's testimony as to what happened next is as follows:

[Detective Colby] She got out of the car. She said that she wanted to talk to Dave Porter. I told her that Dave was having

a hard time. He was sick. I really didn't want her to talk to him. And she said that—well, I offered—I said, "Is there any message I can give him? Anything I can tell him for you?" And she said that Toe [Toaz] wanted him to say that the drugs came from Old Man Jerry or the Reyeses and not from Toe so Toe would get only fifteen years instead of life.

\* \* \* \* \* \*

Q All right. Did you have any response to that? Did you say anything to her in response to that?

A I asked her, "You want me to have Dave lie?" And she said "Yes."

\* \* \* \* \* \*

Q All right. What else did you do? Did you have any further conversations after she said "The words of a dying man are golden?"

A Yes, I asked her whether the drugs did come from Toaz. And she said, "Yes, they did. But have him say they came from the Reyeses or Old Man Jerry or anybody." And then I reiterated to her, I said, "So tomorrow at the deposition, you want Dave to lie and say that the drugs didn't come from Toaz." And she said, "Yes."

At trial, Hizer admitted visiting Toaz in jail and, subsequently, calling Porter. Porter cried during their telephone conversation and told Hizer "that he didn't want to do what they wanted him to do, but he was scared to death of dying in prison." Her recollection of the encounter with Detective Colby when she arrived at the Lindsley home was significantly different from that presented by Colby. According to Hizer, she told Colby that she had talked to a lawyer and "wanted to tell [Porter] it was okay to tell the truth." She denied ever telling Colby that she wanted Porter to lie.

Porter appeared for his scheduled deposition and provided a sworn statement consistent with his grand jury testimony. At the time of Hizer's trial, Porter had died.

At the conclusion of the government's case at trial, the defense moved for a judgment of acquittal on all counts pursuant to Fed.R.Crim.P. 29. The court denied the motion, stating that it believed the testimony of Detective Colby alone would be sufficient to support a conviction on each count. The jury found Hizer guilty on all three counts.

**Discussion**

Hizer argues that insufficient evidence was presented at trial to support her convictions. "Decisions denying a motion for judgment of acquittal are reviewed *de novo* to determine the sufficiency of the evidence." *United States v. Hartsel,* 199 F.3d 812, 815 (6th Cir.1999). In reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Hartsel,* 199 F.3d at 815. "We also resolve all conflicts in testimony and draw every reasonable inference in the government's favor." *United States v. Monus,* 128 F.3d 376, 383 (6th Cir.1997).

The evidence was more than sufficient to establish that Hizer had the requisite criminal intent to obstruct justice by persuading Porter to testify falsely. First, the testimony of Colby was that Hizer visited Lindsley's home intending to talk with Porter about lying during his deposition. Second, Catherine Fase testified that Hizer knew Toaz supplied Porter with

methamphetamine and Melanie Stafford testified that Hizer intended to talk with Porter to get him on Toaz's side. Third, William McKinney testified that Toaz admitted he was sending Hizer to talk with Porter about "messing up" the government's case. In short, based on the evidence presented at trial, any rational trier of fact could have found criminal intent on the part of Hizer beyond a reasonable doubt.

AFFIRMED.